UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PATRICK D. REED, | : | CASE NO. 3:21-cv-00799 |
| Plaintiff, | : | ORDER |
| | : | [Resolving Doc. 9] |
| v. | : | |
| WARDEN LYNEAL WAINWRIGHT, | : | |
| Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In 2018, an Ohio jury convicted Petitioner Patrick Reed of 16 counts related to drug trafficking, unlawful firearms possession, and evidence tampering. Reed now asks this Court for habeas corpus relief from his state incarceration. According to Reed, insufficient evidence supported his convictions. Reed also says that the trial court violated Reed's right to confront adverse witnesses, impermissibly consolidated two separate indictments for trial, and admitted unlawfully obtained evidence.

This Court referred Reed's petition to Magistrate Judge Thomas Parker for a Report and Recommendation. Now, Magistrate Judge Parker recommends that the Court dismiss or deny each of Reed's grounds for relief. The Report and Recommendation also suggests this Court certify Reed's confrontation claim for appeal.

Both parties object. Reed's objections renew his evidence-sufficiency, confrontation, and consolidation claims. Respondent objects that the magistrate judge should not have considered a confrontation argument Reed forfeited and that no grounds for a Certificate of Appeal exist.

Case No. 3:21-cv-00799
GWIN, J.

For the following reasons, the Court **DISMISSES** or **DENIES** each of Reed's claims. But the Court certifies for appeal whether the trial court properly admitted testimony about an anonymous tip to explain officers' conduct.

### I.     AEDPA Standard

AEDPA allows federal courts to grant relief for "extreme" constitutional "malfunctions" in a petitioner's state criminal proceedings.[1]  "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."[2]

A federal habeas corpus petition does not "substitute for ordinary error correction through appeal."[3]  To obtain relief under AEDPA for his properly presented claims, Reed must show that (1) the state court decisions he challenges were "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "unreasonab[ly] determin[ed] facts in light of the evidence presented in the State court proceeding,"[4] and (2) the federal error "had a substantial and injurious effect or influence in determining the jury's verdict."[5]  Although on direct appeal, harmless errors' "cumulative effect" may require reversal,[6] AEDPA prohibits federal courts from granting habeas relief based on "cumulated" "distinct constitutional claims."[7]

### II.     Discussion

In late 2014, police conducted several controlled drug buys between Reed and informants.[8]  Based on the buys, police obtained a search warrant for Reed's home on

---

[1] Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).
[2] Stewart v. Winn, 967 F.3d 534, 541 (6th Cir. 2020) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)).
[3] Harrington v. Richter, 562 U.S. 86, 102–03 (2011).
[4] 28 U.S.C. § 2254(d).
[5] Brecht, 507 U.S. at 638.
[6] United States v. Sypher, 684 F.3d 622 (6th Cir. 2012).
[7] *See* Lorraine v. Coyle, 291 F.3d 416 (6th Cir. 2002).
[8] State v. Reed, 6th Dist. Erie No. E-18-017, 2020-Ohio-138 ¶¶ 6–8.

Case No. 3:21-cv-00799
GWIN, J.

Townsend Street in Sandusky, Ohio.[9] When police executed the warrant for the Townsend Street home, Reed tried to flee and threw drugs and cash under a table.[10] After arresting Reed, police discovered heroin and cocaine, along with evidence that Reed was preparing the drugs for distribution.[11] Police also found a World War II era rifle in a bedroom with other Reed possessions.[12]

In June 2015, a grand jury indicted Reed on ten counts, including drug-trafficking, possessing firearms while under disability, and evidence tampering.[13]

In early 2016, and while Reed was out on bond, police conducted seven more controlled buys between confidential informants and Reed.[14] Police again obtained a search warrant, this time for Reed's home on Larchmont Drive in Sandusky.[15] While executing the search, police found drugs, including heroin, cocaine, and fentanyl, along with $4,000 cash and digital scales.[16] Police also discovered two handguns.[17]

In June 2016, a grand jury indicted Reed on seven counts, including several drug-trafficking counts and two felon-in-possession counts.[18]

Before trial, Reed moved to suppress evidence found at the Townsend and Larchmont homes.[19] Ohio separately moved to consolidate the 2015 and 2016 indictments for trial.[20] The trial court denied both Reed suppression motions and granted the State's motion to join

---

[9] *Id.* ¶ 9.
[10] *Id.* ¶ 10.
[11] *Id.*
[12] *See id.* ¶¶ 10–11.
[13] *See id.* ¶ 2. The 2015 indictment also charged Reed with failing to comply with sex-offender-registration requirements. *Id.* The trial court severed the registration charge. *See id.* ¶ 4 n.1.
[14] *Id.* ¶ 46.
[15] *Id.*
[16] *Id.* ¶ 18.
[17] *Id.*
[18] *Id.* ¶ 2.
[19] *Id.* ¶¶ 40–50.
[20] *Id.* ¶ 4.

- 3 -

Case No. 3:21-cv-00799
GWIN, J.

the cases for trial.[21]

After a nine-day trial, a jury found Reed guilty on all counts.[22] On appeal, an Ohio appeals court reversed and vacated Reed's convictions for trafficking counterfeit drugs from the Townsend home but affirmed Reed's remaining convictions.[23]

In his federal habeas corpus petition, Reed renews several of the arguments he offered the Ohio appeals court. None prevail.

A. Evidence Sufficiency

Reed argues that insufficient evidence existed to support several convictions.[24] Reed first invites the Court to re-evaluate whether a confidential informant's testimony about buying drugs from Reed was credible. Next, Reed asks the Court to reweigh evidence regarding whether Reed—rather than another Townsend resident—possessed the WWII rifle. Reed also argues that police testimony about the rifle lacked credibility and that the rifle did not meet Ohio's "firearm" definition. Finally, Reed asks the Court to assume—with no record support—that drugs and cash Reed discarded under a table while fleeing police remained in plain view.

Because the Court cannot reweigh evidence, and Reed's arguments otherwise find no support in the record or law, the Court overrules this objection.

1. Selling Drugs Near a Minor

The 2015 indictment charged Reed with selling heroin near a child. At trial, Confidential Informant 2 told the jury that she had purchased heroin from Reed at the

---

[21] *Id.* ¶¶ 3–4.
[22] *Id.* ¶ 38.
[23] *See id.* ¶¶ 61–65, 78.
[24] Many of Reed's supposed evidence-sufficiency objections actually attack whether any confrontation violations were harmless. *See* Doc. 17 at 5 (PageID 3084) ("Without the confrontation clause violations, there was insufficient evidence to Convict[sic] Petitioner … ."). The Court addresses those arguments with Reed's confrontation claims.

- 4 -

Case No. 3:21-cv-00799
GWIN, J.

Townsend home while Reed's sister's less-than-five-years-old child was present.[25] The jury found Reed guilty of trafficking drugs near a minor.

Magistrate Judge Parker recommends that sufficient evidence supported the conviction.[26] Along with Confidential Informant 2's testimony, the jury heard a recording of the controlled buy and heard evidence that the substance Reed sold the informant tested positive for heroin.[27]

Reed objects that only Confidential Informant 2's testimony showed that a child younger than five was present. And, according to Reed, the informant so lacked credibility that her testimony alone cannot support Reed's conviction.

But federal habeas courts do not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [the court's] judgment for that of the jury."[28] Here, although Reed's counsel challenged the informant's credibility on cross-examination,[29] the jury found Confidential Informant 2 credible enough to convict Reed. Because the Court cannot disturb the jury's credibility decision, this argument fails.

### 2. Felon in Possession

While searching the Townsend home, police discovered a World War II era rifle near Reed's social security card. In the same room, police also discovered pants containing Reed's identification, other clothing in Reed's size, and paperwork containing Reed's name.[30] The Report and Recommendation concludes that this evidence sufficiently

---

[25] Doc. 6-8 at 176 (PageID 1803).
[26] Doc. 9 at 22 (PageID 2983).
[27] *See id.* (citing Doc. 6-6 at 85–86 (PageID 1224–25); Doc. 6-8 at 171–72, 178–80 (PageID 1798–99, 1805–06).
[28] Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).
[29] Doc. 6-8 at 195 (PageID 1822).
[30] Doc. 6-6 at 107–08, 112 (PageID 1246–47, 1251).

- 5 -

Case No. 3:21-cv-00799
GWIN, J.

supported Reed's constructive possession of the rifle.[31]

Reed objects that prosecutors cherry-picked certain evidence to show constructive possession and failed to address evidence that others lived with Reed. This objection fails. Reed does not cite any clearly established federal law requiring the prosecution to introduce evidence that undercuts its own arguments.

Next, Reed says that police testified inconsistently about whether the rifle was loaded. Since Ohio's felon-in-possession law applies regardless of whether the gun was loaded,[32] this objection presumably attacks the officers' credibility. This Court cannot overturn the jury's credibility decisions.

Finally, Reed says that "no human being could safely fire" the rifle "in the shape it was discovered … ."[33] Even if this argument found support in the record (it does not[34]), Ohio's firearms definition does not exempt firearms that cannot be safely fired.[35] The provision defines "firearm" as "any deadly weapon" that fires projectiles.[36] Because Reed gives no evidence that the rifle does not fit Ohio's firearms definition, this objection fails.

### 3.   Evidence Tampering

Reed's final insufficient-evidence claim challenges his evidence-tampering conviction. At trial, police testified that when officers executed the Townsend home warrant,

---

[31] Doc. 9 at 26 (PageID 2987). Reed does not raise any specific objections to the evidence supporting his possession of two handguns at the Larchmont home. But sufficient evidence existed to show Reed's constructive possession of those handguns, too. The Court addresses that evidence below with the Detaureis Reed confrontation claim.

[32] *See* O.R.C. § 2923.11 ("'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."); O.R.C. § 2923.13(A)(3) (felons may not possess firearms).

[33] Doc. 17 at 25 (PageID 3104).

[34] True, an officer noted that the rifle was "[m]issing a butt plate." *See* Doc. 6-9 at 41 (PageID 1935). But no evidence showed that the rifle could not be safely fired without the butt plate. *See id.* at 40–43 (PageID 1934–37). Instead, an officer testified that although the gun was in "moderate condition," *id.* at 41 (PageID 1935), police took precautions when test firing simply because the gun was not "modern," *id.* at 25 (PageID 1919).

[35] *See* O.R.C. § 2923.11. It would be a strange rule indeed to allow felons to possess a firearm only if the gun might endanger its user.

[36] *Id.*

- 6 -

Case No. 3:21-cv-00799
GWIN, J.

Reed ran towards a rear exit and "discard[ed]" plastic bags and money under a table.[37] Ohio charged and convicted Reed under its evidence-tampering provision, which prohibits "conceal[ing] … any … thing, with purpose to impair its … availability as evidence in [a criminal] proceeding or investigation … ."[38]

Magistrate Judge Parker recommends that the police testimony sufficiently supports the conviction. Reed objects that the drugs and money remained in officers' "plain view at all times," making any tampering conviction contrary to Ohio law.[39] But Reed gives no evidence—let alone evidence that clearly and convincingly rebuts the state court's contrary finding—that the drugs and money remained in plain view. So, the Court overrules this objection.

### B. Confrontation Claims

Reed says that Ohio violated his rights under the Sixth Amendment's Confrontation Clause by allowing witnesses to testify about non-witnesses' out-of-court statements. Specifically, Reed points to (1) an anonymous tip to police about where Reed hid drugs, (2) Daryl Wilson's statements about Reed counterfeit-drug transactions, (3) Candace Wilson's out-of-court account of buying drugs from Reed, (4) Informant Leslie Shepard's statements about Reed's nickname, and (5) Reed's son's statements to police about which Larchmont bedroom belonged to Reed. Reed also says that if the violative statements had not been admitted, insufficient evidence supported the jury's verdict.

None of these qualifies Reed for habeas corpus. Ohio offered the anonymous source's tip to explain why police searched the Larchmont gutter, not to prove that Reed hid

---

[37] Doc. 6-6 at 100, 106 (PageID 1239, 1245).
[38] O.R.C. § 2921.12.
[39] Doc. 17 at 25 (PageID 3104).

- 7 -

Case No. 3:21-cv-00799
GWIN, J.

drugs there.  So, the tip does not violate the Confrontation Clause.  And even if the remaining out-of-court statements should not have been admitted, any violations were harmless.

### 1. Anonymous Tip

The trial court admitted police testimony recounting an anonymous tip about where Reed kept some drugs.  Specifically, the tipster told police that "Reed concealed narcotics in several different locations" and that Reed moved his drugs into a "green bean can … in the gutter" after "be[ing] robbed for narcotics."[40]

The trial court immediately instructed the jury to consider the testimony only "to explain the detective's conduct."[41]  The Ohio appeals court decided the curative instruction sufficed to avoid any confrontation violation.[42]  And the magistrate judge likewise recommends that the trial court properly admitted the testimony to explain why police searched the roof.

Reed objects that the limiting instruction did not prevent prejudice.  As Reed sees it, no other evidence linked Reed to the drugs in the gutter.  So, Reed says, the jury must have relied on the out-of-court informant statement to convict Reed.  The Court disagrees and overrules Reed's objection.

The Confrontation Clause prohibits introducing out-of-court "testimonial" statements against criminal defendants.[43]  Only testimonial statements that are also hearsay can violate the Confrontation Clause.[44]  Out-of-court statements offered only to explain "why [police]

---

[40] Doc. 6-8 at 34 (PageID 1661).
[41] *Id.* at 34–35 (PageID 1661–62).
[42] State v. Reed, 6th Dist. Erie No. E-18-017, 2020-Ohio-138 ¶ 59.
[43] *See generally* Crawford v. Washington, 541 U.S. 36 (2004).
[44] *See id.* at 59 n.9. ("The Clause … does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

- 8 -

Case No. 3:21-cv-00799
GWIN, J.

officers took the actions they did" do not, therefore, infringe the confrontation right.[45]

Here, the trial court admitted the out-of-court statement to explain why police searched the roof. So, the Court overrules this objection.

Even if admitting this testimony violated Reed's confrontation rights, any violation would likely have been harmless. Evidence from Reed's Larchmont bedroom supported Reed's constructive possession of the gutter drugs, including a digital scale, nearly $4,000, and documents addressed to Reed.[46] The jury also heard testimony that officers observed Reed grow concerned when police sought to search for drugs on the roof.[47] So, sufficient evidence connected Reed to the drugs even without the tipster's statements.

### 2. Daryl Wilson

At trial, police testimony recounted the Daryl Wilson statements that Reed sold Daryl counterfeit drugs from the Townsend home. The jury convicted Reed on two counterfeit-drug-trafficking counts.

The Ohio appeals court overturned Reed's counterfeit-drug-trafficking convictions because prosecutors failed to show that Reed knew the drugs were counterfeit.[48] Because Daryl's out-of-court statements primarily dealt with the now-vacated counterfeit-drug convictions, Respondent argues that any Daryl confrontation violation is moot.

Magistrate Judge Parker recommends that because Daryl's testimony made other Townsend drug trafficking more likely, the Daryl confrontation claim is not moot. But the magistrate judge also recommends this Court decide that any violation was harmless. Reed objects.

---

[45] *See* United States v. Cromer, 389 F.3d 662 (6th Cir. 2004).
[46] State v. Reed, 6th Dist. Erie No. E-18-017, 2020-Ohio-138 ¶ 18.
[47] *Id.* ¶ 68.
[48] *Id.* ¶ 65.

- 9 -

Case No. 3:21-cv-00799
GWIN, J.

The Court agrees with the Report and Recommendation's analysis. Even assuming the testimony's admission is not moot and that the testimony violated Reed's confrontation right, other evidence showed Reed's Townsend drug trafficking. The jury heard another informant's in-court testimony that Reed sold drugs from the Townsend home[49] and heard a detective's testimony recounting surveillance of and drug-trafficking evidence recovered from the Townsend home.[50] So, the out-of-court statements about the counterfeit-drug transactions likely had little effect.

### 3. Candace Wilson

With Informant Alischia Fluty's help, police set up a controlled buy between Reed and Candace Wilson. After the buy, police arrested Candace and seized heroin from her. The grand jury charged Reed with aiding or abetting Candace's heroin trafficking.

Although Candace did not testify, at trial, Fluty and police recounted some Candace statements. The magistrate judge recommends that any confrontation violation was harmless. Reed objects and says that because Candace may have had an alternative heroin source near the Larchmont home, insufficient evidence apart from Candace's out-of-court statements existed to convict Reed of selling Wilson the heroin.

Because sufficient other evidence showed that Reed sold Candace drugs, any confrontation violation here was harmless. Fluty testified that she transported Candace to and from the Larchmont house to buy drugs. And Fluty watched Candace hide an object on her body and later saw Wilson hand the same object to a detective.[51] Police later confirmed that the object was heroin.[52]

---

[49] Doc. 6-8 at 167–68, 171, 173–76, 179 (PageID 1794–95, 1798, 1800–03, 1806).
[50] Doc. 6-6 at 98–99, 107–12, 116, 120, 157, 170–71 (PageID 1237–38, 1246–51, 1255, 1296, 1309–10).
[51] Doc. 6-10 at 69, 73, 75, 82–85 (PageID 2148, 2152, 2154, 2161–64).
[52] Doc. 6-7 at 70 (PageID 1454).

Case No. 3:21-cv-00799
GWIN, J.

A detective corroborated Fluty's testimony and told the jury that he watched Candace walk from the informant's car towards the Larchmont home and back.[53] And although police could not see Candace enter the home, police saw her leave the Larchmont home.[54] Plus, the jury heard the already-described physical evidence that Reed lived and possessed drugs at the Larchmont home.

Because other evidence sufficiently supported the conviction, the Court overrules Reed's Candace Wilson objection.

### 4. Leslie Shepard

At trial, a detective testified that Leslie Shepard told police "that she had connections with Patrick Reed" and that Shepard told detectives that Reed's nickname was "Bunny."[55] Trial counsel did not object.[56]

Reed does not even attempt to explain how Shepard's out-of-court statement about the "Bunny" nickname injected the trial with prejudice. Even assuming the conversations were testimonial (a point Reed does not address), other witnesses testified about the "Bunny" nickname.[57] So, the Court overrules this objection.

### 5. Detaureis Reed

Reed's final confrontation claim involves his Reed's son, Detaureis Reed. Detaureis arrived at the Larchmont home while police searched it and told officers which bedroom belonged to Petitioner Reed. At trial, police testified about Detaureis's statements. Reed objected and the trial court sustained the objection.[58]

---

[53] Doc. 6-7 at 59–62, 65, 68 (PageID 1443–46, 1449, 1452).
[54] *Id.* at 61–62 (PageID 1445–46).
[55] Doc. 6-7 at 112 (PageID 1496).
[56] *See id.*
[57] *E.g.*, Doc. 6-8 at 164 (PageID 1791).
[58] Doc. 6-7 at 214, 222 (PageID 1598, 1606).

- 11 -

Case No. 3:21-cv-00799
GWIN, J.

Although Reed failed to raise this claim in his Petition, the magistrate judge considered this claim's merits. The Report and Recommendation suggests that because other evidence showed which room was Petitioner Reed's, any confrontation violation was harmless.

Respondent objects that by failing to raise any Detaureis confrontation claim in his petition, Reed forfeited the claim. Petitioner Reed objects that insufficient other evidence tied Reed to the bedroom, which contained the two handguns and drug-trafficking evidence.

Even assuming Reed did not forfeit this claim, it fails. In the bedroom at issue, police found Reed's clothing, Reed cellphone paperwork, and financial paperwork with Reed's name, email, and bank account information.[59] The bedroom also contained a safe to which Reed had the key.[60] So, sufficient other evidence showed the room was Reed's.

In summary, each of Reed's confrontation claims fails. The court properly admitted the anonymous tipster's statements to explain why police searched Reed's roof. And Reed fails to show that any confrontation violation had a substantial, injurious effect on the jury's verdict.

### C. Unlawful Merger

Reed next claims that the trial court should not have joined the 2015 and 2016 indictments for trial. The Report and Recommendation says that no clearly established federal law governs state joinder. Reed objects to that conclusion. But because Reed gives no proof of any actual prejudice, this objection fails.

To qualify for federal habeas relief based on state misjoinder, Reed "must show that

---

[59] Doc. 6-7 at 230–36 (PageID 1614–20).
[60] *Id.* at 240–43 (PageID 1624–27).

Case No. 3:21-cv-00799
GWIN, J.

misjoinder of the counts 'result[ed] in prejudice so great as to deny a Reed his ... right to a fair trial'" under the Fourteenth Amendment.[61]  Reed must also show "*actual* prejudice, not merely the *potential* for prejudice."[62]

Reed falls well short of this high bar.  The objection gives only an unsupported assertion that "joining 17 unrelated counts … was prejudicial" and citation to Ohio law.  So, the Court overrules this objection.

D.    **Suppression**

Reed does not object to the recommendation to dismiss his suppression claim.  Absent objection, the Court may adopt this recommendation without review.[63]  Still, the Court reviewed this recommendation and agrees that Reed's suppression claim is not cognizable under federal habeas corpus review.[64]

E.    **Certificate of Appealability**

The Report and Recommendation suggests granting a Certificate of Appealability to allow Reed to challenge the confrontation violations' harmlessness.  Respondent objects.

The Court will certify for appeal whether explaining police conduct permitted the anonymous informant's statements about where Reed hid drugs.  Some circuits have expressed concern that testimonial evidence admitted to explain the "course of an investigation" threatens to swallow the Sixth Amendment's confrontation guarantee.[65]  So, some reasonable jurists might decide that the anonymous informant's statements about

---

[61] Davis v. Coyle, 475 F.3d 761, 777 (6th Cir. 2007)
[62] *Id.*
[63] 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 145 (1985); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).
[64] *See generally* Stone v. Powell, 428 U.S. 465 (1976)
[65] *See* Jones v. Basinger, 635 F.3d 1030, 1044–48 (7th Cir. 2011) (discussing the investigation-context exception and citing United States v. Reyes, 18 F.3d 65 (2d Cir. 1994); and then citing 2 MCCORMICK ON EVIDENCE § 249 ("One area where abuse may be a particular problem involves statements by arresting or investigating officers regarding the reason for their presence at the scene of a crime.")).

Case No. 3:21-cv-00799
GWIN, J.

Reed's drugs' location violated Reed's confrontation rights.

## II. Conclusion

For the foregoing reasons, the Court **DISMISSES** Reed's suppression claim and **DENIES** Reed's remaining claims.

The Court certifies that an appeal from this decision could be taken in good faith and issues a certificate of appealability for the following issue:

> Whether the trial court properly admitted the anonymous informant's out-of-court statements to explain why police officers searched Reed's roof.

No other basis exists upon which to issue a certificate of appealability.[66]

IT IS SO ORDERED.

Dated: July 25, 2023    *s/    James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[66] *See* 28 U.S.C. § 1915(a)(3); 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).